## GARLAND SLOAN v. STATE.

No. 24303. March 16, 1949.
Appellant's Motion for Rehearing Denied (Without Written
Opinion) April 20, 1949.

*John A. Cook,* Mt. Pleasant, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The conviction is for assault to murder with a penalty of one year in the penitentiary.

Appellant and Clay Taylor lived in the same neighborhood, a few miles southeast of the city of Mount Pleasant. They were not friends and associates and, while there is no direct evidence to that effect, it does appear from all of the circumstances that their relationship had become strained because of the result of an election in 1946, in which appellant was the only candidate for constable of his precinct who had his name on the ticket. A number of boys and others of the community wrote in the name of another candidate and defeated appellant. Clay Taylor was a farmer who owned a peanut thrasher, a bailer and other machinery, which he operated for hire and moved from one field to another. On the 27th day of December, 1946, Taylor conveyed such machinery to a location for his operation in a field a short distance from the road. As he left it in the afternoon he met appellant in the road and saw him looking at the machinery. It was parked near a stack of peanuts. Taylor became suspicious and, accompanied by a nephew, repaired to the place after dark, with guns, for the purpose of guarding the machinery. According to their testimony appellant appeared about 11:30 with a large can of coal-oil and went from one machine to another pouring the oil on each one and then turned toward the stack of peanuts. As he did so, the prosecuting witness called on him to stop. He testified that appellant did stop, fell to the ground on his knees and began shooting. Both Taylor and his nephew answered the fire and seriously wounded appellant. They took his gun away from him and left him on the ground while they went to call a doctor and the sheriff. Upon returning they found him some feet away covered up with a cotton sack.

Appellant told quite a different story. He denied having passed the place where the machinery was parked or having

gone there voluntarily, and denied having had his gun and that he did any shooting. He said he lived some distance from the place where the state contends the shooting took place and on the farm of his father; that he returned from town late in the afternoon and, after eating supper, took a bucket and went to his father's house, quite a distance away, for a bucket of water. As he came into the road on his return he says that Taylor and his nephew drove up and stopped. They offered him some whisky, which he declined to take. They then wanted to hire him to make whisky. This he refused to do, stating his reasons for declining. They jumped on him and beat him senseless and he has no knowledge of what occurred thereafter. The inference from his testimony is that the prosecuting witness and the nephew took him in their car some distance away and planted him, in an unconscious condition, in the field. He was wounded and the evidence of his wounds was a matter brought into the case for the purpose of contradicting the story told by the prosecuting witnesses as to the distance and direction they were from him. It will not be necessary to discuss further the conflict in evidence in the case.

The bills of exception in the record bring to us several complaints. Bill No. 1 complains of the admission of the statement by Harold Smith that he was in the army, went to gunnery school and was taugh to shoot straight. Probably this was introduced in connection with the issue above mentioned about the distance and direction from which he was shot. We see no purpose in the testimony and, likewise, see no harm in it.

Bills of Exception Numbers 2, 3, and 6 are in question and answer form and cannot be considered under the statute.

Bill No. 4 complains that the court permitted the state to ask the defendant if he had ever been convicted of a felony charge in this or any other state. Whatever answer was given to the question does not appear in said bill and we are unable to find the harm in it. We note, however, that the court has qualified this bill by saying that when the question was asked defendant's attorney started to make an objection and while he was doing so the defendant replied, "The grand jury did not bill me." We are unable to evaluate the rest of the qualification which the court placed to the bill, but it could not be so construed as to help appellant's cause.

Bill of Exception No. 5 is practically to the same effect as Bill. No. 4.

Bill of Exception No. 7 recites that the jury first returned the verdict into court assessing a punishment of three years in the penitentiary and recommending suspension of the sentence. Appellant was present in the court but his attorney was not. The issue on suspended sentence had not been submitted to the jury and the court, after viewing the verdict, refused to receive same and directed the jury to return to the jury room, to read the charge and consider their verdict. In his qualification of the bill, the court says he did not give them any further instruction. After further consideration the jury returned into the court room and delivered the verdict which is the basis of the judgment in this case. We see nothing irregular about this procedure.

Finding no reversible error in the record, the judgment of the trial court is affirmed.